## Shotts *v.* Pennsylvania Turnpike Commission, Appellant.

Argued May 21, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*George R. Specter,* Assistant General Counsel, with
him *Harry W. Lightstone,* General Counsel, for Penn-
sylvania Turnpike Commission, appellant.

*Albert M. Nichols,* with him *John F. Dent* and
*Irving L. Bloom,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, July 1, 1968:

Paul K. Shotts and Nellie K. Shotts own a 135.24-
acre tract of land in Fulton County. The Pennsylva-
nia Turnpike Commission, in laying out the project
known as Rays Hill and Seidling Hill Tunnel By-Pass,
condemned 21.25 acres of this tract, bisecting it, so

that 60 acres lay on the north side of the route and 75 acres on the south side. On their land the Shotts operated a dairy farm equipped with all the necessary buildings for such purpose. 77 acres in the northern portion of the tract were used as crop land and 45 acres (through which flowed a small stream) were used for pasture; 13 acres constituted wooded area.

The board of view appraised the damage done the Shotts by taking of their land at $13,000. The Shotts appealed to the court of common pleas and the jury trial which followed resulted in a verdict of $25,583.33. The commission moved for a new trial on the ground of excessiveness of verdict which was refused, and it has appealed to this Court.

Paul Shotts testified that his damages amounted to $35,000; his expert witness testified to damages amounting to $19,000; the Commonwealth's expert witness found a loss in land value of only $8,650. The Shotts argue for retention of the verdict on the loss of crop land area plus damage to their remaining property because of drainage resulting from the highway construction which will contaminate the stream flowing through the pasture land, from which their cattle drink.

The appellant advances several arguments as to why it is entitled to a new trial, but, boiled down to its essence, it is that the great disparity between the amount awarded by the board of view and the verdict of the jury shows that the jury must have been wrong. If the estimate of a board of view is to be regarded as final and infallible, there would be no need in the law for appeal for a jury trial. What was said in *Springer v. Allegheny County*, 401 Pa. 557, is applicable here, namely, "The value of the land appropriated was the only substantial issue the jury had to resolve. . . . In arriving at a just determination of the fair market value, the jury had as criteria the customarily widely disparate opinions of the real estate experts who testified for

the respective sides. It was the province of the jury to weigh the credibility of the valuation witnesses' testimony and to determine what the land was fairly worth at the time of the condemnation. The jurors had a right to, and undoubtedly did, bring to bear, in appraising the expert testimony, what they had perceived with respect to the property at the time they formally viewed it for trial purposes and, further exercised their own good common sense. To overthrow the verdict on the ground that it was against the weight of the evidence would, in the light of the record, amount to a judicial usurpation of the jury's province."

Our review of the record convinces us that the verdict is supported by the evidence and the realization that the jury, in its determination, naturally took into consideration its own observations from personal view of the premises involved. This view is evidentiary under §703 of the Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. 1-703.

Affirmed.

---

Dissenting Opinion by Mr. Chief Justice Bell:

I dissent and would grant a new trial, because the jury's verdict is not only against the great weight of the evidence *—far beyond even the value of the property fixed by the owner's own witness and three times the value fixed by the Commonwealth's witness—but is so shocking as to be clearly a miscarriage of Justice. *Feltovich v. City of Sharon,* 409 Pa. 314, 186 A. 2d 247; *Frisina v. Stanley,* 409 Pa. 5, 185 A. 2d 580; *Bohner v. Eastern Express, Inc.,* 405 Pa. 463, 175 A. 2d 864; *Clewell v. Pummer,* 388 Pa. 592, 131 A. 2d 375.

---

* As to the award of a jury of view, see *Mazur v. Commonwealth,* 390 Pa. 148, 134 A. 2d 669; as to the weight to be given the testimony of an owner of property, see *Lenik Condemnation Case,* 404 Pa. 257, 172 A. 2d 316.

DISSENTING OPINION BY MR. JUSTICE COHEN:

This appeal involves the resolution of one issue: Did the court below abuse its discretion by refusing the Commonwealth's motion for a new trial on the basis that the verdict returned by the jury was clearly excessive and not in accordance with the weight of the evidence? The majority concludes that no such abuse of discretion was committed. I disagree.

The record indicates that the owner's expert witness, after carefully considering all possible compensable damages, testified that in his opinion the condemnee's damages amounted to $19,000. The Commonwealth's expert witness, after taking the same elements into consideration, concluded that damages were in the amount of $8,650. The property owner testified that his damages were in the amount of $35,000 and the jury returned a verdict in the amount of $25,583.33. Although not part of the record evidence, the board of viewers awarded damages in the amount of $13,000, which award is certainly a factor to be considered in determining the excessiveness of the verdict. See *Mazur v. Commonwealth,* 390 Pa. 148, 134 A. 2d 669 (1957).

In *Lenik Condemnation Case,* 404 Pa. 257, 172 A. 2d 316 (1961), we indicated that the testimony of a property owner with respect to damages, while competent, must be closely scrutinized because of his interest and lack of experience. Here we are confronted with a situation wherein the property owner's valuation of his damages was four times the amount of damages testified to by the Commonwealth's expert witness; almost three times the award made by the board of viewers, and almost twice the damages testified to by his own expert witness. Under these circumstances, the property owner's testimony should be afforded little weight, if any, in considering whether or not the jury verdict was against the weight of the evidence. Since

the verdict of $25,583.33 was twice the amount awarded by the board of viewers, and clearly in excess of all the expert valuation, including the property owner's own expert witness, I would conclude that the court below abused its discretion in refusing the Commonwealth's motion for a new trial. The wide disparity in the damages fixed by the various witnesses, especially the disparity between the experts' and the property owner's testimony, leads irresistably to the conclusion that the verdict of $25,583.33 was a figure arrived at by the jury without rationally considering all of the testimony adduced.

I dissent.

Mr. Justice O'BRIEN joins in this dissenting opinion.